IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GUY WYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CV3164 |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM AND ORDER** |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Guy Wyman, claims in this Social Security appeal that the Commissioner's decision to deny him disability insurance benefits and supplemental security income is contrary to law and not supported by substantial evidence. The Commissioner's decision will be affirmed.

**I.   Background**

On April 25, 2006, Wyman applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. § § 1381, *et seq.* (Tr. 76-93, 597-603.) Wyman alleged that since January 26, 2006, he has been unable to engage in any type of substantial and gainful work activity due to lung cancer, a hitatal hernia, depression, shortness of breath, mood swings, anxiety, stomach pain, high blood pressure, chronic obstructive pulmonary disease ("COPD") and bipolar disorder.[1]  (Tr. 25.)

---

[1] Wyman has not contested the ALJ's findings with respect to his mental functioning. Wyman's appeal appears to center around the ALJ's assessment of

Wyman's applications for benefits were denied initially and on reconsideration, and he appealed the denial to an administrative law judge ("ALJ"). An administrative hearing was held on March 28, 2007. (Tr. 17.) Wyman, accompanied by his attorney, Ross E. Stubblefield, was present at the hearing and testified. (*Id.*) Steven H. Kuhn, a vocational expert, also appeared at the hearing. (*Id.*)

On May 8, 2007, the ALJ issued an unfavorable decision, concluding that Wyman is under a disability, but that a substance use disorder is a contributing factor material to the determination of disability. (Tr. 14-32.) Accordingly, the ALJ found that Wyman has not been disabled under the Social Security Act at any time from the alleged onset date through the date of the decision.

In her decision, the ALJ evaluated Wyman's disability claim by following the sequential analysis prescribed by the Social Security Regulations.[2] *See* 20 C.F.R. §§

---

his pulmonary condition, particularly, his alleged limitations caused by lung cancer and COPD.

[2] The Social Security Administration uses a five-step process to determine whether a claimant is disabled. These steps are described as follows:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

404.1520 and 416.920. After conducting her review, the ALJ concluded as follows:

1. Wyman meets the insured status requirements of the Social Security Act through December 31, 2007;

2. Wyman has not engaged in substantial gainful activity since January 26, 2006, the alleged onset date;

3. Wyman has the following severe combination of impairments: status post stage I lung cancer with surgical lobectomy and chemotherapy, hernia repair, learning disorder, and substance abuse with bipolar disorder, anxiety disorder, and personality disorder;

4. Wyman does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

5. Wyman has the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently. Wyman can occasionally climb, balance, stoop, kneel, crouch, and crawl. Wyman has no limits in the use of his hands. He should work in a clean air environment, but should avoid exposure to dust, odors, fumes, gases, cold, heat, or humidity. Wyman should also avoid exposure to hazardous equipment or machinery. In addition, Wyman's ability to perform a full range of unskilled work is eroded by moderate limitations in the ability: to remember locations and work-like procedures; to understand and

---

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). If it is determined, after reviewing these steps, that the claimant is disabled, but there is medical evidence of a substance use disorder, the ALJ must determine whether the substance use disorder is a contributing factor material to the determination of disability. If the substance abuse is found to be a material contributing factor, the claimant is not disabled for purposes of the Social Security Act. 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.").

3

remember very short and simple instructions and detailed instructions; to carry out very short and simple instructions and detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to make simple work-related decisions; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to ask simple questions and request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and adhere to basic standards or neatness and cleanliness; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places to use public transportation; and to set realistic goals or plan independently of others;

6. Wyman is unable to perform any past relevant work;

7. Wyman was born on September 25, 1968, and was thirty-eight years old, which is defined as a younger individual age eighteen to forty-four, on the alleged disability onset date;

8. Wyman has a limited education and is able to communicate in English;

9. Transferability of job skills is not an issue because Wyman's past relevant work is unskilled;

10. Considering Wyman's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder(s), there are no jobs that exist in significant numbers in the national economy that Wyman can perform;

11. If Wyman stopped the substance use, the remaining limitations would

4

      cause more than a minimal impact on Wyman's ability to perform basic work activities; therefore, Wyman would continue to have a severe impairment or combination of impairments;

12. If Wyman stopped the substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1;

13. If Wyman stopped the substance use, he would have the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. Wyman has no limits in the use of his hands. He should work in a clean air environment, but should avoid exposure to dust, odors fumes, gases, cold, heat, or humidity. Wyman should also avoid exposure to hazardous equipment or machinery. Because of his mental impairments, Wyman would be limited to performing unskilled jobs with a SVP of one or two. Work should be routine and repetitive and should not involve making goals or dealing with job changes. Work should avoid extended concentration and should avoid continuous social interaction with the general public or coworkers, but he could handle brief or superficial interaction.

(T. 19-25.)

## II.  Issues on Appeal

Wyman presents several issues on appeal. These issues are briefly summarized as follows:

1. Whether the ALJ applied the proper legal standard in evaluating the medical opinion of Dr. David Rutz, Wyman's treating source opinion, by not giving Dr. Rutz's opinion controlling weight;

2. Whether the ALJ erroneously failed to re-contact Dr. Rutz in order to

> evaluate the merits of Wyman's claim; and
>
> 3. Whether the ALJ's determination that Dr. Rutz may have been improperly persuaded in preparing his medical report is supported by substantial evidence.

(Filing 19, Br. Supp. Pl.'s Soc. Sec. Compl. at CM/ECF p. 4.)

## III.  Discussion

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995).

### 1.  **<u>Whether Dr. Rutz's opinion was given proper weight</u>**

Wyman contends that the ALJ improperly refused to give controlling weight to the opinion of Dr. David Rutz, Wyman's family practitioner and primary treating

6

physician, regarding Wyman's limitations and residual functional capacity ("RFC"). Wyman complains that the ALJ wrongly dismissed Dr. Rutz's opinion in favor of non-examining, non-treating consultants. As such, according to Wyman, the ALJ's decision is not based on substantial evidence as required by 42 U.S.C. § 405(g).

Dr. Rutz completed a Pulmonary Residual Functional Capacity Questionnaire ("Questionnaire") on December 11, 2006, which purports to provide Dr. Rutz's assessment of Wyman's RFC. (Tr. 419-22.) In the Questionnaire, Dr. Rutz stated that Wyman suffers from lung cancer and COPD.[3] (*Id.*) Given these diagnoses, Dr. Rutz indicated on the Questionnaire that Wyman is severely limited in his ability to perform a number of functions. (*Id.*) Despite Wyman's diagnoses and limitations, Dr. Rutz determined that Wyman's prognosis was fair. (*Id.*) Dr. Rutz further noted that the symptoms and limitations Wyman suffers as a result of COPD began six years prior to the date of the Questionnaire, or in December of 2000. (*Id.*) Dr. Rutz did not, however, indicate a time-frame for the limitations caused by lung cancer, which Wyman was diagnosed with in January of 2006. (*Id.*) Additionally, Dr. Rutz did not differentiate between the symptoms and limitations caused by lung cancer versus those caused by COPD. (*Id.*)

The ALJ determined that Dr. Rutz's opinion was not entitled to controlling weight because his notes were inconsistent with the record as a whole. (Tr. 27.) *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (stating that in order for a treatment physician's opinion to have controlling weight, it must not be inconsistent

---

[3] Wyman was diagnosed with lung cancer in January of 2006. Fortunately, Wyman responded very well to treatment. Progress notes of Wyman's oncologist, Dr. Mark Carlson, dated March 31, 2006, April 24, 2006 and May 15, 2006, each state that Wyman was responding well to treatment and that he had good breath sounds and good respiratory effort. (Tr. 364-68.) By October of 2006, Wyman had a negative cancer biopsy. (Tr. 227, 399.) Wyman was in remission at the time of the hearing in this matter. (Tr. 632.)

7

with the other substantial evidence in the case record); *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) (stating that "an appropriate finding of inconsistency with other evidence alone is sufficient to discount [a medical] opinion."). Specifically, the ALJ found that the duration of the limitations described by Dr. Rutz was inconsistent with evidence showing that Wyman's most limiting symptoms did not persist for a year or more. A review of the medical evidence in the record supports the ALJ's conclusion.

Dr. Rutz's opinion indicated that Wyman's limitations associated with COPD were present as early as December of 2000. (Tr. 422.) However, Wyman worked at the substantially gainful level since December of 2000. (Tr. 70, 106-07, 135, 271.) Wyman was not fired from his last job until June of 2004, for reasons unrelated to his pulmonary condition. (Tr. 106-07, 271.) While Wyman's condition appears to have worsened when he developed lung cancer, Dr. Rutz did not attempt to identify the limitations which were caused by the cancer. (Tr. 419-22.) Wyman's medical records also indicate an improvement in Wyman's pulmonary functioning following his recovery from cancer, but this improvement is not noted in Dr. Rutz's opinion. (Tr. 27, 413, 425, 476, 542-43, 553-56, 558-59.) Given the inconsistencies between Dr. Rutz's opinion and the record as a whole regarding the duration of Plaintiff's pulmonary limitations, I find that the ALJ properly considered Dr. Rutz's opinion in assessing Wyman's entitlement to benefits.

Wyman also complains that the ALJ gave improper weight to the opinions of non-treating, state agency medical consultants. The Social Security regulations are clear that an ALJ may consider these experts' opinions in evaluating a claimant's entitlement to benefits. 20 C.F.R. § 404.1527(f)(2). The ALJ's decision states that she considered all the medical evidence of record in reaching her conclusion, not just these experts' opinions. (T. 30.) Thus, the court finds no error in the ALJ's consideration of the state agency medical consultants' opinions.

8

## 2. Whether the ALJ had a duty to re-contact Dr. Rutz in order to evaluate Wyman's claim

Wyman argues that the ALJ should have re-contacted Dr. Rutz, rather than discounting the value of his opinion. Wyman's argument on this point is unconvincing.

The Social Security regulations provide that re-contacting a physician is only necessary if the doctor's records are "inadequate for us to determine whether [the claimant is] disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912. Here, the ALJ did not conclude that Dr. Rutz's records were inadequate, unclear, or incomplete. Rather, the ALJ discounted Dr. Rutz's opinion because it was inconsistent with the evidence of record showing that Wyman's most limiting symptoms did not persist for a year or more. (Tr. 26.) This being the case, the ALJ did not err by not re-contacting Dr. Rutz.

## 3. Whether the ALJ erred when it discounted Dr. Rutz's opinion because of alleged improper persuasion

Wyman asserts that the ALJ improperly speculated that Dr. Rutz was biased in completing the Questionnaire and wrongly discounted Dr. Rutz's opinion as a result of this alleged bias.[4] In purported support of this argument, Wyman points to the fact

---

[4] On December 11, 2006, Wyman saw PA-C Carrie Kleinschmeidt at the Nebraska Pulmonary Specialties Clinic. (Tr. 473-75). In her notes, PA Kleinschmidt stated that Wyman wanted to go through his functional capacity evaluation to make sure that they had all his symptoms and that the forms were filled out correctly. (Tr. 473.) PA Kleinschmidt spent approximately thirty

9

that the ALJ's decision notes the possibility that a physician may sympathize with a patient and complete forms in a manner which may assist the patient in obtaining benefits. (T. 26-27.) The ALJ stated:

> The record also reveals that the claimant attempted to go through the Questionnaire with his treating source. The possibility always exists that a doctor or medical source may express an opinion in an effort to assist the patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking support notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(*Id.*) I find that the ALJ did not err merely by discussing this observation in her decision.

The ALJ determined that Dr. Rutz's opinion was inconsistent with the other evidence of record with respect to Wyman's ability to work. (*Id.*) As discussed above, these inconsistencies are supported by the record. A review of the ALJ's decision makes apparent that the ALJ did not rely solely, if at all, on possible improper persuasion in discounting Dr. Rutz's opinion or in evaluating Wyman's

---

minutes with Wyman completing the form. (Tr. 474-75.) She subsequently wrote to Wyman's primary care providers, including Dr. Rutz, and reviewed Wyman's history of cancer and COPD. (Tr. 473.) There does not appear to be any direct evidence, however, that Dr. Rutz reviewed the Questionnaire with Wyman.

entitlement to benefits.[5]  Instead, inconsistency was the primary focus. (*Id.*) Given this, I conclude that the ALJ did not err by alluding to the possibility that Dr. Rutz may have been improperly persuaded when completing the Questionnaire.

## IV. Conclusion

For the reasons stated, and after careful consideration of each argument presented in Wyman's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

August 31, 2009.

BY THE COURT:<br>
*Richard G. Kopf*<br>
United States District Judge

---

[5] Even if the possibility of improper persuasion was considered, this circumstance, if supported by the record, would likely have little significance as case law is clear that treating physicians' opinions may be discounted when the opinions are based on subjective complaints, as opposed to objective medical evidence.  *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (finding the ALJ justified in discrediting treating physician opinion based solely on the claimant's subjective complaints and not supported by other evidence).